**Barbara A. SAVONA, Plaintiff–Appellant,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellee.**

No. 93–2281
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 27, 1993.

---

Charles E. Davis, Pitts, Davis & Morris, P.A., Orlando, FL, for appellant.

Melissa Arony, Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, FL, for appellee.

Before TJOFLAT, Chief Judge, HATCHETT and COX, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of Florida law that is determinative of the cause but unanswered by controlling precedent of the Supreme Court of Florida. We therefore certify that question for resolution by the highest court of Florida.

The following facts are not disputed. Barbara A. Savona, while an employee of the Hotel Royal Plaza in Orlando, Florida, was involved in a catastrophic motor vehicle accident that rendered her totally disabled. Under the terms of her employment, Savona received major medical health insurance under a group policy issued by the Prudential Insurance Company of America. The group policy entitled Savona to aggregate lifetime health insurance benefits of $1,000,000. The policy also provided a mechanism for converting the insured employee's coverage from the group plan to an individual expense health insurance policy (conversion policy) in the event of the termination of the employee's position at the hotel.[1] The conversion provision stated, however, that "[t]he benefits and provisions of the individual policy differ from those of the [group] plan."

As a result of her total disability, Savona's employment was terminated and her coverage under the group health insurance policy was canceled. Following the termination of her group health insurance coverage, Savona converted her group policy to an individual policy. The conversion policy, however, only provided maximum lifetime health insurance benefits of $250,000.

On June 14, 1991, after fully exhausting the $250,000 provided her under the conversion policy, Savona brought this action in state court, seeking a declaratory judgment that she was entitled to a conversion policy with lifetime health insurance benefits equal to those in the group policy, i.e. $1,000,000. On August 2, 1991, Prudential removed the case to the United States District Court for the Middle District of Florida.

---

1. Under Fla.Stat.Ann. § 627.6675 (West Supp. 1993), all group policies must provide employees with the option of transferring to a conversion policy whenever their coverage under the group policy is terminated. Current section 627.6675 is, for purposes of this inquiry, identical to the section in effect at the time Savona's conversion policy issued, and states, in relevant part:

627.6675. Conversion on termination of eligibility

Subject to all of the provisions of this section, a group policy ... that provides, on an expense-incurred basis, hospital, surgical, or major medical expense insurance, or any combination of these coverages, shall provide that an employee ... whose insurance under the group policy has been terminated for any reason ... shall be entitled to have issued to him by the insurer a policy or certificate of health insurance, referred to in this section as a "converted policy."

Fla.Stat.Ann. § 626.6675 dictates the amount of coverage that a major medical conversion policy, such as the one involved here, must contain. At the time Savona's conversion policy issued, the relevant portion of section 627.6675 read as follows:

> (11) OPTIONAL COVERAGE; MAJOR MEDICAL.—Subject to the provisions and conditions of this part, if the group insurance policy from which conversion is made insures the employee ... for major medical coverage, the employee [e.g. Savona] ... shall be entitled to obtain a converted policy providing catastrophic or major medical coverage under a plan meeting the following requirements:
>
> (a) A maximum benefit at least equal to either, at the option of the insurer, the amount specified in subparagraph 1. or subparagraph 2.
>
> 1. The smaller of the following amounts:
>
> a. The maximum benefit provided under the group policy.
>
> b. A maximum payment of $250,000 per covered person for all covered medical expenses incurred during the covered person's lifetime.
>
> 2. The smaller of the following amounts:
>
> a. The maximum benefit provided under the group policy.
>
> b. A maximum payment of $250,000, for each unrelated injury or sickness.

1985 Fla.Laws ch. 85–177, at 1243.

As indicated above, Savona's conversion policy provided $250,000 of coverage, thus complying with the statutory mandate. Savona contends, correctly, that notwithstanding such compliance, Florida case law (specifically, *Northbrook Life Ins. Co. v. Clark*, 582 So.2d 1199 (Fla.App. 2 Dist.1991) and *Blue Cross/Blue Shield v. Shufelt*, 487 So.2d 1085 (Fla.App. 5 Dist.1986)), construing section 627.6675 required Prudential to issue Savona a policy with the same $1,000,000 coverage that the group policy provided.

Prudential, on the other hand, contends that the Supreme Court of Florida, if called upon to consider these cases, would overrule them because they are in direct conflict with the plain language of section 627.6675. According to Prudential, the plain language of section 627.6675, affording an employer the option of providing a conversion policy with maximum major medical coverage amounting to the lesser of either the statutorily mandated amount or the group policy limits, permits an employer to offer a conversion policy with less coverage than that provided under the original group policy.

On February 11, 1993, the district court entered final judgment in favor of Prudential, concluding that the holdings in *Shufelt* and *Clark* are in conflict with "unambiguous statutory language to the contrary," and that, to the extent that those two opinions were "based upon a perception of legislative intent, such perception has been unequivocally refuted by subsequent amendments to section 627.6675." [2] Savona appealed this judgment.

---

**2.** The district court's reference to "subsequent amendments to section 627.6675" refers to section 627.6675(20). Current section 627.6675(20) reads, as enacted in July, 1992 and subsequently amended prior to the effective date on October 1, 1992:

> Nothing in this section or in the incorporation of it into insurance policies shall be construed to require insurers to provide benefits equal to those provided in the group policy from which the individual converted, provided, however, that comprehensive benefits are offered which shall be subject to approval by the Insurance Commissioner.

Fla.Stat.Ann. § 627.6675(20). In ratifying subsection (20) as written above, however, the Florida Legislature specifically chose to delete, prior to the October 1, 1992 effective date, language that had accompanied current section 627.6675(20). The predecessor to the final version of section 627.6675(20) had originally stated:

> Nothing in this section or in the incorporation of it into insurance policies shall be construed to require insurers to provide benefits equal to those provided in the group policy from which the individual converted. Further, the Legislature finds and declares that this subsection is a clarification and specification of the legislative intent of this section prior to this enactment; and that in light of confusion relating to the rights and obligations of insurers and insureds resulting from judicial and administrative interpretations of this section, the state has great interest in giving retrospective intent to this clarification. The Legislature therefore intends that this section be given such retrospective effect a is necessary to clarify that it does not, and did not before this enactment, require the issuance of conversion policies providing

We believe the issue of Florida law these parties raise is appropriate for resolution by the highest court of Florida. We, therefore, certify the following question:

WHETHER, UNDER FLA.STAT.ANN. § 627.6675, A CONVERSION INSURANCE POLICY MUST PROVIDE BENEFITS EQUAL TO THOSE PROVIDED UNDER THE ORIGINAL GROUP INSURANCE POLICY.

In certifying this question, we do not intend the particular phrasing of it to limit the Supreme Court of Florida in its consideration of the problem posed by the case. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.

benefits equal to those provided in the group policy from which the individual converted.

See 1992 Fla.Sess.Laws Serv. ch. 92–33, at 376 (West).